IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CITY OF EUGENE, an Oregon municipal corporation, | Civ. No. 04-492-HO |
| Plaintiff, | Order |
| v. | |
| IGI RESOURCES, INC., an Idaho corporation, authorized to conduct business in Oregon, | |
| Defendant. | |

## Introduction

Defendant IGI Resources, Inc. (IGI) supplies natural gas to customers in Eugene, Oregon. Intervenor-defendant Weyerhaeuser is a customer of IGI with facilities in Eugene. Plaintiff City of Eugene (the city) imposed its natural gas supplier tax on IGI. IGI asserts counterclaims for refund of tax payments and other relief. Weyerhaeuser seeks a declaration that the city's tax on IGI's sales to Weyerhaeuser is unlawful. The parties filed motions for summary judgment on the city's claims. IGI further seeks an order requiring plaintiff to refund taxes, penalties,

late fees and interest paid. IGI and Weyerhaeuser contend that by its terms, the natural gas supplier tax does not apply to IGI, and, alternatively, application of the tax to IGI violates the United States Constitution and Oregon law.

Based on the record before the court, IGI has not earned revenues used to measure the natural gas supplier tax. IGI has therefore incurred no tax liability. Because the tax is not properly imposed on IGI under the terms of the relevant city code provisions, the court finds it unnecessary to resolve the constitutional and state law challenges to imposition of the tax on IGI. Because the city does not provide natural gas suppliers with an adequate opportunity to contest the application of the tax, due process requires that the city refund IGI's tax payments.

### The City's Natural Gas Supplier Tax Scheme

Section 3.605(1) of the Eugene City code provides,

> Any person engaged in or carrying on the business, occupation or pursuit of a natural gas supplier or operation of a natural gas distribution system during part or all of a calender year * * * shall pay to the city for that year a tax of five percent (5%) of the gross revenues.

A natural gas supplier is "[a]ny person who makes natural gas available for consumption within the city or who operates a natural gas distribution system which makes natural gas available for consumption within the city." EC § 3.600. Gross revenues are,

> [r]evenues earned by the natural gas supplier from
> *operations* within the city, including but not limited
> to revenues from the sale and/or transportation of
> natural gas consumed within the city and revenues from
> the use, rental or lease of operating facilities of the
> natural gas supplier other than residential-type space
> and water heater equipment, less the net write-off of
> uncollectible accounts directly related to such
> revenues. Gross revenues shall not include:
> (a) Revenues paid directly by the United States of America
>     or any of its agencies;
> (b) Proceeds from the sale of bonds, mortgages or other
>     evidence of indebtedness, securities or stocks; or
> (c) Sales at wholesale by one public utility to another
>     when the utility purchasing the service is not the
>     ultimate customer.

Id. (italics added).

## Undisputed Facts

Except where noted, the following facts are undisputed. IGI distributes natural gas through an existing pipeline infrastructure to industrial customers in the western United States and western Canada. Although IGI's customers enter into contracts directly with IGI, delivery of gas to a customer's facility is often made by a natural gas transportation company other than IGI. For certain customers within the city, IGI delivers gas to locations near Eugene, but outside the city limits. These locations are known as "City Gates." Northwest Natural Gas Company (Northwest Natural) takes control of the natural gas at the City Gates and transports it to these customers on its local distribution system. These customers presently include the University of Oregon and Lane Community College, and formerly included the Eugene Water and Electric

3 - ORDER

Board (EWEB).

In contrast to these customers, Weyerhaeuser owns capacity on the Northwest Pipeline System (the pipeline). By owning its own capacity, Weyerhaeuser has the right to ship natural gas it owns from the Washington/British Columbia border, to points along the pipeline, including the City Gates, where the pipeline connects with Northwest Natural's local distribution system.

IGI has not sold or transported natural gas within the city at any time since January 1, 2000, the date upon which the city alleges IGI's liability for the tax commenced.[1]

Contracts between IGI and its customers specify that sales are made at certain delivery points, where legal title to natural gas, risk of loss and transportation responsibility pass from IGI to its customers. With the exception of Weyerhaeuser, the delivery point in IGI's contracts with customers with facilities in the city is one of the two City Gates. For Weyerhaeuser, delivery points have been in Sumas, Washington, Huntingdon,

---

[1] The city denies that IGI does not sell natural gas within the city, arguing that the place of sale is a legal determination for the court. A reasonable trier of fact could only conclude from the evidence that IGI's sales since January 1, 2000, occur outside the city, and to the extent this is a legal determination, the court so holds. The city cites to correspondence allegedly evidencing that EWEB executed a sales agreement in Eugene with IGI in July, 1999. Williamson Aff., Ex. 9. The referenced agreement predates January 1, 2000, and is not in evidence. Further, there is no evidence of the terms of the agreement, such as where delivery and payment are to be made, and where orders are to be placed.

4 - ORDER

British Columbia, and other locations in Canada.

Northwest Natural pays a franchise fee to the city for the right to own and operate natural gas distribution facilities within the city right of way. Like the natural gas supplier tax, the franchise fee is measured by five percent of revenues from the sale of natural gas consumed within the city. Like IGI, Northwest Natural is a natural gas supplier as defined by EC § 3.600. Northwest Natural receives a natural gas supplier tax credit for amounts it pays in franchise fees. As a result, Northwest Natural has not had to make a natural gas supplier tax payment to the city.

IGI has no office in the city and does not own or lease property in the city. IGI's employees do not reside or work full time in the city. IGI does not advertise in the city. IGI pays no city taxes other than the tax involved in this case. Aside from its counterclaim, IGI has not sued anyone in the city.

From January, 2000, through December, 2004, IGI's employees made 24 visits to the city. The purpose of these visits was to advise customers of market conditions, to learn about the customers' plans for operations, and to maintain good will with customers.

A city financial analyst informed IGI by letter that it owed natural gas supplier taxes. IGI paid the city $637,019.11 for the year 2000, through the third quarter of 2002. On or about

5 - ORDER

April 9, 2003, IGI requested a refund of $232,597.99. The city denied the request on or about May 27, 2003. IGI has not made a natural gas supplier tax payment since its November 6, 2002 payment for the third quarter of 2002. The city retained all amounts paid by IGI.

On April 9, 2004, IGI filed tax returns with the city for the third quarter, 2002, and the calender year 2003. The returns reported $7,053.76 in natural gas supplier taxes due. IGI filed amended returns for the same period on April 29, 2004. The amended returns report no taxes due.

## Discussion

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

I. <u>IGI's Tax Liability Under EC §§ 3.600</u>

As noted, the city's natural gas supplier tax is measured by gross revenues. The parties dispute whether defendant earned gross revenues, as those words are defined in the city code. The court interprets the city code as it would a statute. <u>Lincoln Loan Co. v. City of Portland</u>, 855 P.2d 151, 155 (Or. 1993). The intent of the city council is discerned from the text and context of the code section, guided by applicable rules of construction. <u>Portland General Elec. Co. v. Bureau of Labor and Industries</u>, 859 P.2d 1143, 1145-47 (Or. 1993). If the council's intent is clear

from the text and context, further inquiry, including analysis of legislative history, is unnecessary. Id.[2]

Gross revenues are "[r]evenues earned by the natural gas supplier from *operations* within the city, . . ." EC § 3.600 (italics added). The city unreasonably maintains that revenues from the sale or transport outside the city of gas consumed within the city are gross revenues. The phrase "including but not limited to revenues from the sale and/or transportation of natural gas consumed within the city and revenues from the use, rental or lease of operating facilities of the natural gas supplier other than residential-type space and water heating equipment," provides no exception from the requirement that gross revenues must be earned from operations within the city.[3] It makes no more sense to say that revenues from operations within the city include revenues from the sale or transport outside the city of natural gas consumed inside the city, than it does to say that "revenues from the rental or lease of [the supplier's] operating facilities" outside the city are revenues earned from

---

[2]In light of these mandatory rules of interpretation, the court declines IGI's invitation to interpret the code with insight from two analogous areas of tax law. See IGI's Memo. at 8-9.

[3]The code does not define "operations." Among other definitions, "operation" means "performance of a practical work or of something involving the practical application of principles or processes," or "a business transaction, esp. when speculative . . ." Merriam Webster's Collegiate Dictionary, 815, (10th ed. 1996).

7 - ORDER

operations within the city.

The definition of natural gas supplier, emphasized by the city, does not aid the city's argument. It does not follow that simply because a natural gas supplier is defined as a person who makes natural gas available for consumption within the city that all revenues of the natural gas supplier from the sale or transport of gas consumed within the city are used to measure the tax, regardless of where the sale or transport of natural gas takes place.

The intent of the city council is clear from the text and context of Section 3.600. Further investigation of the council's intent is unnecessary. Gross revenues are earned only from operations within the city, which do not include the sale or transport outside the city of natural gas consumed within the city. IGI has no revenue from which to measure the tax.

Because IGI is not properly liable for the tax, the court need not consider the constitutional and state law challenges to the application of the tax to IGI.

II. <u>IGI's Claim for Refund</u>

IGI argues that it is entitled to a refund of payments it made to the city as a result of the city's inapplicable tax. Citing to <u>Johnson v. Crook County</u>, 100 P. 294 (Or. 1909), the city argues that even if the tax is invalid or inapplicable to IGI, it need not refund IGI's voluntary payments.

8 - ORDER

The city imposes penalties for late payments of 18% per year. Pl's Memo., Attach. B; Williamson Aff. [#81] Ex. 10. The city may also assess a daily $500 civil penalty for nonpayment of the natural gas supplier tax. EC § 3.995 (Todderud Decl., Ex. C). Tax payments are due 45 days following the end of each quarter. EC § 3.605(2). The code provides no pre-deprivation procedure for challenging the tax. In these circumstances, due process requires a fair post-deprivation opportunity to challenge the accuracy and legal validity of the tax obligation, and a clear and certain remedy. McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation, 496 U.S. 18, 38 (1990) (citing to Atchison, Topeka and Sante Fe Railway Co. v. O'Connor, 223 U.S. 280, 285 (1912)).[4]

The city contends that McKesson's requirements do not apply because IGI believed the tax was validly applied at the time it paid the tax, and, alternatively, that McKesson's requirements are satisfied by the city code's appeal provisions and the

---

[4]The city argues that IGI cannot base its claim for refund on the contention that the city's tax scheme violates due process for failure to meet the minimum taxpayer protections required by McKesson, because IGI did not so plead in its counterclaim. This argument is rejected. The counterclaim incorporates IGI's sixth defense that the city code provisions relied upon by the city are unenforceable because they violate the Due Process Clause of the United States Constitution. IGI's Answer, ¶¶ 8, 13. Furthermore, the city received and used the opportunity to respond on the merits to IGI's position. City's Reply Memo. [#79] at 7.

state's statutory writ of review procedure. City's Reply Memo. at 8. The court disagrees at the outset with the former argument. A taxing jurisdiction can, consistent with due process, enact procedural limitations on post-deprivation remedies such as an early protest requirement or relatively short limitations period. McKesson, 496 U.S. at 45. Whether a taxpayer who pays an invalid tax believing the tax is valid can avail himself of post-deprivation procedures depends on the particular procedures provided. See Reich v. Collins, 513 U.S. 106, 113-14 (1994) (fact that taxpayer did not know tax was unconstitutional at the time of payment did not permit state to deprive taxpayer of formerly available post-deprivation remedy which did not require protest with payment). The requirements of due process are not altered by the taxpayer's beliefs.

The city contends that McKesson is satisfied by EC § 3.080 and Oregon's statutory writ of review procedure. Section 3.080, captioned "Business Licenses - Appeal," provides that any person aggrieved by an administrative action taken pursuant to Chapter 3 may appeal the action within the time and in the manner provided in section 2.021 of the code. Section 2.021 provides that a person aggrieved by an administrative action of the city manager or designee may, within 15 days after the date of notice of the action, appeal in writing to the city manager. EC § 2.021(1). A hearing will ordinarily be held within 30 days, and the hearings

10 - ORDER

officer will issue a written decision within ten days of the hearing date. EC § 2.021(3),(6). Oregon's writ of review procedure provides that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors . . ." Or.Rev.Stat. § 34.020. Restitution is available. Or.Rev.Stat. § 34.100.

While it is perhaps arguable that city Financial Analyst Boyle's letter request for payment and Finance Director Hardt's letter denial of IGI's refund request were appealable under EC § 3.080 (assuming IGI would have read beyond the caption "Business Licenses - Appeal"), this is not the kind of clear and certain post-deprivation remedy required by McKesson. The code contains no provisions for challenging the tax, which is self-executing. Hardt's letter would not have issued at all had IGI not decided to create its own procedure and request a refund by letter.

The court disagrees with the city's further argument that IGI could have challenged Hardt's letter denial of IGI's refund request in a writ of review proceeding. The remedy contemplates record review of some judicial or quasi-judicial process or procedure. See Wing v. City of Eugene, 437 P.2d 836, 838(Or. 1968); Or.Rev.Stat. § 34.020. The letter denial resembles a quasi-judicial decision to the extent that Hardt construed city code provisions. It was not issued as a result of any particular

established adjudicatory process or procedure, however. This fact distinguishes this case from the city's authority, <u>Koch v. City of Portland</u>, 760 P.2d 252 (Or. 1988), where the Supreme Court of Oregon held the remedy available to challenge the mayor of Portland's decision to discipline a police officer on the recommendation, after the completion of an investigation, of the police department's internal investigation division.

The city's additional authority, <u>Ester v. City of Monmouth</u>, 903 P.2d 344, 350 (Or. 1995) is not to the contrary. In that case, the court held that the writ of review, expressly available by statute to owners of property against which an assessment for local improvements has been imposed, was adequate to challenge the assessment, so that a requirement that at least ten taxpayers together challenge the assessment under Article XI, Section 11b of the Oregon Constitution did not violate due process. In the case at bar, there is no similar legislative pronouncement that a clear and certain remedy is available to challenge the tax.

Assuming for argument that Hardt's denial letter was amenable to challenge by writ of review, there is evidence that counsel for the city told a representative of IGI's parent company that no procedure existed to challenge Hardt's denial of IGI's refund request. Travis Decl., ¶ 5. Neither Boyle's letter request for payment nor Hardt's denial letter advised IGI of a procedure for challenging the tax. Williamson Aff. [#81], Ex.

for IGI shall submit a proposed form of judgment, approved as to form by counsel for Weyerhaeuser and counsel for the city.

IT IS SO ORDERED.

DATED this 20th day of October, 2005.

*Michael R. Hogan*
United States District Judge

10, Koliner Decl., Ex. 11 at 7-8. This evidence further supports the court's finding that the city did not provide the clear and certain post-deprivation remedy contemplated by the Court in McKesson.

Because IGI is not properly subject to the city's natural gas supplier tax, and the city's tax scheme does not include a clear and certain post-deprivation remedy, due process requires that the city refund IGI's payments. McKesson, 496 U.S. at 39.

Based on the foregoing, IGI's sales of natural gas to customers in the city do not generate gross revenues as defined by EC § 3.600. IGI and Weyerhaeuser are therefore entitled to summary judgment dismissing the city's claims for collection of taxes owed, injunction against violation of municipal ordinance, and declaration that IGI is liable for the tax. IGI is further entitled to summary judgment on its first counterclaim for refund of past payments. IGI's second counterclaim for failure to honor refund request and third counterclaim for setoff are moot. Weyerhaeuser is entitled to summary judgment on its counterclaim for declaration that the city's taxation of revenues from IGI's sales of natural gas to Weyerhaeuser is unlawful.

## Conclusion

IGI's motion for summary judgment [#67] is granted; Weyerhaeuser's motion for summary judgment [#69] is granted; and the city's motion for summary judgment [#78] is denied. Counsel

13 - ORDER